1    Jonathan Solish (CA Bar No. 67609)
     Keith D. Klein (CA Bar No. 184846)
2    Kristy A. Murphy (CA Bar No. 252234)
     BRYAN CAVE LLP
3    120 Broadway, Suite 300
     Santa Monica, California  90401-2386
4    Telephone:     (310) 576-2100
     Facsimile:     (310) 576-2200
5    E-Mail:        jonathan.solish@bryancave.com
                    keith.klein@bryancave.com
6                   kristy.murphy@bryancave.com

7    Attorneys for Defendants

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   STEVEN P. K. LEUNG, an individual;            Case No. 3:09-cv-05825-SI
     CONSTANCE LEUNG, an individual; EC TIRES,
12   INC., a California corporation; and           [Assigned to Hon. Susan Illston]
     CRODA/LEUNG, LLC, a business entity,
13                                                 Date:      February 12, 2010
                    Plaintiffs,                    Time:      9:00 a.m.
14                                                 Courtroom: 10
                         vs.
15                                                 **DEFENDANTS' NOTICE OF**
     SUMITOMO CORPORATION OF AMERICA, a           **MOTION AND MOTION TO**
16   New York Corporation; BIG O TIRES, LLC, a    **DISMISS**
     Nevada Limited Liability Company; TBC
17   CORPORATION, a Florida Corporation; BILL       [Filed concurrently with Appendix of
     MOSELEY, an individual; DAVID LYNCH, an        Foreign Authority]
18   individual; and DOES 1-100, inclusive,

19                  Defendants.                    Complaint filed:  September 25, 2009
                                                   Trial Date:       Not yet assigned
20

21

22

23

24

25

26

27

28

SM01DOCS\755310.3

                                              DEFENDANTS' NOTICE OF MOTION AND
                                              MOTION TO DISMISS - 3:09-cv-05825-SI

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 12, 2009 at 9:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Susan Illiston in Courtroom 10 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendants Sumitomo Corporation of America, Big O Tires, LLC, TBC Corporation, Bill Moseley, and David Lynch, will, and hereby do, move this Court for an Order, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), dismissing each and every cause of action from the First Amended Complaint ("FAC") of plaintiffs Steven P. K. Leung, Constance Leung, EC Tires, Inc., and Croda/Leung, LLC.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(e) on the grounds that the plaintiffs' FAC fails to state a claim for relief against the defendants and is uncertain as to the following causes of action:

(1)     The plaintiffs' first cause of action for a declaration that the franchise agreements are terminated because they contend that there is no consideration flowing to the plaintiffs does not present a legal controversy for which a declaration of rights would serve any useful purpose. The Agreements attached to the First Amended Complaint establish the fact of consideration as a matter of law, leaving no justiciable controversy.

(2)     The plaintiffs' second cause of action for rescission fails to state a claim because rescission is merely a remedy and not an independent cause of action.

(3)     The plaintiffs' third cause of action for breach of contract fails to state a claim because plaintiffs Steven and Constance Leung, as a sole stockholder and a guarantor of a franchisee corporation, have no standing to sue a franchisor for breach of franchise agreements, and the claimed breaches are inconsistent with the express provisions of the agreements.

(4)     The plaintiffs' fourth cause of action for breach of the implied covenant of good faith and fair dealing fails to state a claim because plaintiffs Steven and Constance Leung are not parties to the franchise agreements, and the plaintiffs cannot supplement or modify the express terms of the franchise agreements by reformulating their claims under the implied covenant. Tort recovery for breach of the implied covenant is barred by Colorado's economic loss rule and the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

plaintiffs' inability to allege any special relationship.

(5)     The plaintiffs' fifth cause of action for tortious interference fails to state a claim because it is barred by the economic loss rule.  The plaintiffs have also not identified any constitutional, statutory, regulatory, common law, or other determinable legal standard that would prohibit this conduct, as required to state a claim.  Big O had a contractual right to ensure that the plaintiffs purchased tires from Big O or its approved sources and was privileged to interfere with the plaintiffs' attempts to contract with wholesalers in violation of the franchise agreements.

(6)     The plaintiffs' sixth cause of action for fraud fails to plead allegations of fraud with the specificity required under Rule 9 of the Federal Rules of Civil Procedure, and the integration clause in the franchise agreements bars reasonable reliance.

(7)     The plaintiffs' seventh cause of action for violation of the Unfair Practices Act fails to state a claim because the allegations merely track the language of Business & Professions Code § 17045, without providing any supporting facts.  The plaintiffs knew from the franchise agreements that "different terms and conditions, including a different fee structure and investment requirements may pertain to different Big O franchises" and that Big O "does not represent that all franchise agreements are or will be identical."

(8)     The plaintiffs' eighth cause of action for negligent misrepresentation fails to plead allegations of fraud with the specificity required under Rule 9 of the Federal Rules of Civil Procedure and fails to allege that the defendants supplied the offending information for use in a transaction involving a third party, as required to state a claim.

(9)     The plaintiffs' ninth cause of action for negligent hiring, training and supervision fails to state a claim because it is barred by the economic loss rule.  The plaintiffs have alleged no facts demonstrating that any employee was incompetent or unfit to perform the duties for which they were hired, that defendants were put on notice of the employee's unfitness, or that an employee engaged in any tortious conduct.  The plaintiffs also fail to specify the particular employee(s) that serve as the basis for this claim.

(10)     The plaintiffs lack standing to assert a cause of action for unfair competition because they has not demonstrated that they suffered injury in fact or lost money or property that

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

could be subject to restitution.  Additionally, the plaintiffs fail to state a claim because they have not alleged any unlawful, fraudulent or unfair act.

(11)     All of the plaintiffs' causes of action are uncertain.  The plaintiffs refer to plural "Defendants" throughout the First Amended Complaint, rendering the pleading confusing and leaving the defendants and this Court to guess who is being accused of what.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities in support thereof, all pleadings and papers on file in the action, all other matters of which the Court may take judicial notice, and such other and further matters as may be presented to the Court at or in connection with the hearing.

Dated:   December 18, 2009                         Respectfully submitted,
                                                   BRYAN CAVE LLP
                                                   Jonathan Solish
                                                   Keith D. Klein
                                                   Kristy A. Murphy


                                                   By:___*/s/ Jonathan Solish*_____
                                                   Jonathan Solish
                                                   Attorneys for Defendants SUMITOMO
                                                   CORPORATION OF AMERICA, BIG O TIRES,
                                                   LLC, TBC CORPORATION, BILL MOSELEY, and
                                                   DAVID LYNCH

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# Table of Contents

**Page**

Prefatory Statement ............................................................................................................. 1

Statement of Facts .............................................................................................................. 1

    1.    The Parties ....................................................................................................... 1

    2.    The Franchise Agreements ............................................................................ 2

Legal Argument ................................................................................................................. 3

    1.    Legal Standard For A Motion Under Rule 12(b)(6) ....................................... 3

    2.    Choice of Law ................................................................................................. 4

    3.    Colorado's Economic Loss Rule Limits the Plaintiffs to Contract Claims............... 4

    4.    Plaintiffs Fail to State Any Claim Against the Individual Defendants ................... 6

    5.    Plaintiffs Fail to Establish Alter Ego Liability ............................................... 6

    6.    Declaratory Relief Would Serve No Useful Purpose ..................................... 6

    7.    Rescission Is Not an Independent Cause of Action ........................................ 9

    8.    There Is No Viable Claim for Breach of Contract ......................................... 9

        A.    Steven and Constance Leung Have No Contract with the Defendants ......... 9

        B.    The Alleged Breaches Conflict with Provisions of the Contract ............... 10

    9.    The Implied Covenant Cannot Add Duties that Contradict the Contract ............. 11

        A.    Steven and Constance Leung Have No Contract with Defendants ............ 11

        B.    Implied Covenant Claim is Vague and Duplicative .................................... 11

        C.    The Plaintiffs Allege No Special Relationship .......................................... 12

    10.    There Is No Viable Claim for Tortious Interference ................................. 12

    11.    There Is No Viable Claim for Fraud or Negligent Misrepresentation ................. 13

        A.    The Plaintiffs Fail to Plead Fraud with the Requisite Specificity ............. 13

        B.    The Plaintiffs Do Not Allege a Third Party Transaction............................ 14

        C.    The Integration Clause Bars Reasonable Reliance ..................................... 14

    12.    There Is No Viable Claim for Violation of the Unfair Practices Act.................... 16

    13.    There Is No Viable Claim for Negligent Hiring, Training and Supervision .......... 16

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

14.    There Is No Viable Claim for Unfair Competition ................................. 17

    A.    The Plaintiffs Lack Standing................................................. 17

    B.    The Plaintiffs Have Not Alleged An Unlawful Act ..................... 18

    C.    The Plaintiffs Have Not Alleged A Fraudulent Act ................... 19

    D.    The Plaintiffs Have Not Alleged An Unfair Act......................... 20

15.    The Complaint is Uncertain ................................................. 21

Conclusion.................................................................................. 21

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1

**Table of Authorities**

2

Page

3 **Cases**

4 *AAMCO Transmissions, Inc. v. Harris*,
    1990 WL 83336 (E.D.Pa. 1990) ........................................................................... 8

5 *ABF Capital Corp. v. Osley*,
6    414 F.3d 1061 (9th Cir. 2005) ............................................................................. 4

7 *Am. Presents, Ltd. v. Hopkins*,
    330 F.Supp.2d 1217 (D. Colo. 2004) ................................................................. 12

8 *Amoco Oil Co. v. Ervin*,
9    908 P.2d 493, 498 (Colo. 1995) ......................................................................... 11

*Ashcroft v. Iqbal*,
10    129 S.Ct. 1937 (2009) ................................................................................... 4, 21

11 *Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) ............................................................................... 3
12
*Bank of the West v. Super. Ct.*
13    (1992) 2 Cal.4th 1254 ........................................................................................ 18

14 *Bardin v. DaimlerChrysler Corp.*
    (2006) 136 Cal.App.4th 1255 ............................................................................ 20
15
*Barnes v. Burger King Corp.*,
16    932 F.Supp. 1420 (S.D.Fla. 1996) ..................................................................... 15

17 *Bautista v. Los Angeles County*,
    216 F.3d 837 (9th Cir. 2000) ............................................................................. 21
18
*Bay Chevrolet v. Gen. Motors Acceptance Corp.*
19    (1999) 72 Cal.App.4th 861 ............................................................................... 20

20 *Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955 (2007) ............................................................ 3, 16
21
*Berryman v. Merit Prop. Mgmt., Inc.*
22    (2007) 152 Cal.App.4th 1544 ............................................................................ 19

*Boeing Co. v. Cascade Corp.*,
23    207 F.3d 1177 (9th Cir. 2000) ............................................................................. 7

24 *BRW, Inc. v. Dufficy & Sons, Inc.*,
    99 P.3d 66 (Colo. 2004) ...................................................................................... 5
25
*Buckland v. Threshold Enters., Ltd.*
26    (2007) 155 Cal.App.4th 798 .............................................................................. 18

27 *Cal. Bagel Co. v. Am. Bagel Co.*,
    Bus. Franchise Guide (CCH) ¶ 11,880 (C.D.Cal. 2000) .................................. 15

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS - 3:09-CV-05825-SI

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*Californians for Disability Rights v. Mervyn's, LLC*
(2006) 39 Cal.4th 223................................................................................... 18

*Capital Nat'l Bank v. McDonald's Corp.,*
625 F.Supp. 874 (S.D.N.Y. 1986) ................................................................. 4

*Cellars v. Pac. Coast Packaging, Inc.,*
189 F.R.D. 575 (N.D. Cal. 1999) ................................................................. 21

*Ciletti v. Exxon Co., USA,*
Bus. Franchise Guide (CCH) ¶ 10,190 (E.D.Pa. 1992) ............................ 10

*Clegg v. Cult Awareness Network,*
18 F.3d 752 (9th Cir. 1994).......................................................................... 4

*Colorado Interstate Gas Co. v. Chemco, Inc.,*
833 P.2d 786 (Colo. App. 1992) ................................................................. 12

*Comm. on Children's Television v. Gen. Foods Corp.*
(1983) 35 Cal.3d 197................................................................................... 20

*Cont'l Airlines v. McDonnell Douglas Corp.*
(1989) 216 Cal.App.3d 388......................................................................... 15

*Cooper v. Cooper,*
146 P.2d 986 (Colo. 1944) ............................................................................ 7

*Cortez v. Purolator Air Filtration Prods., Co.*
(2000) 23 Cal.4th 163................................................................................. 18

*Davis v. Gulf Oil Corp.,*
572 F.Supp. 1393 (C.D.Cal. 1993) ............................................................ 16

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
(1995) 11 Cal.4th 376................................................................................. 12

*Dole Food Co. v. Patrickson,*
538 U.S. 468 (2003) ...................................................................................... 6

*Dunafon v. Taco Bell Corp.,*
Bus. Franchise Guide (CCH) ¶ 10,919 (W.D. Mo. 1996)........................... 9

*Durning v. First Boston Corp.,*
815 F.2d 1265 (9th Cir. 1987)....................................................................... 4

*Edwards v. Marin Park, Inc.,*
356 F.3d 1058 (9th Cir. 2004)..................................................................... 14

*Exxon Corp. v. Super. Ct.*
(1997) 51 Cal.App.4th 1672 ............................................................. 8, 13, 16

*Federico v. Super. Ct.*
(1997) 59 Cal.App.4th 1207 ....................................................................... 17

*Fiore v. McDonald's,*
1996 WL 331090 (E.D.N.Y. 1996) .............................................................. 9

*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
  2009 WL 2246212 (N.D. Cal. 2009)................................................... 14

*Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*,
  2008 WL 111223 (N.D. Cal. 2008)..................................................... 12

*Gregory v. Albertson's, Inc.*
  (2002) 104 Cal.App.4th 845............................................................. 20

*Grubka v. WebAccess Int'l, Inc.*,
  445 F.Supp.2d 1259 (D.Colo. 2006) ................................................. 14

*Grynberg v. Agri Tech, Inc.*,
  10 P.3d 1267 (Colo. 2000) .................................................................. 5

*Hafiz v. Greenpoint Mortg. Funding, Inc.*,
  – F.Supp.2d –, 2009 WL 2137393 (N.D.Cal. 2009) .......................... 7

*Hengel, Inc. v. Hot 'N Now, Inc.*,
  825 F.Supp. 1311 (N.D. Ill. 1993) ..................................................... 9

*Hinesley v. Oakshade Town Center*
  (2005) 135 Cal.App.4th 289............................................................. 16

*In re Phillips*,
  139 P.3d 639 (Colo. 2006) .................................................................. 6

*Juarez v. Boy Scouts of Am., Inc.*
  (2000) 81 Cal.App.4th 377............................................................... 17

*Lubin v. Sybedon Corp.*,
  688 F.Supp. 1425 (S.D. Cal. 1988) ................................................... 14

*MedImmunce, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ........................................................................... 7

*Nakash v. Super. Ct.*
  (1987) 196 Cal.App.3d 59 .................................................................. 9

*Nedlloyd Lines B.V. v. Super. Ct.*
  (1992) 3 Cal.4th 459........................................................................... 4

*New York Life Ins. Co. v. K N Energy, Inc.*,
  80 F.3d 405 (10th Cir. 1996)............................................................ 11

*Olsen v. Breeze, Inc.*
  (1996) 49 Cal.App.4th 608............................................................... 19

*Onoh v. Citigroup*,
  2009 WL 2246207 (N.D.Cal. July 27, 2009) .................................... 7

*PMC, Inc. v. Saban Entm't, Inc.*
  (1996) 45 Cal.App.4th 579............................................................... 13

*Princess Cruise Lines, Ltd. v. Super. Ct.*
  (2009) 179 Cal.App.4th 36 ................................................................ 9

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS - 3:09-CV-05825-SI

*Puentes v. Wells Fargo Home Mortgage, Inc*.
(2008) 160 Cal.App.4th 638................................................................................ 20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc*.,
124 F.3d 430 (3d Cir. 1997) ............................................................................... 8

*Radiology Prof'l Corp. v. Trinidad Area Health Assoc.*,
565 P.2d 952 (Colo. App. 1977), *aff'd*, 577 P.2d 748 (Colo. 1978) ..................... 13

*Raleigh v. Performance Plumbing & Heating*,
130 P.3d 1011 (Colo. 2006) ............................................................................... 17

*RHC, LLC v. Quizno's Franchising, LLC*,
Case No. 04-CV-985, 2005 WL 1799536 (Colo. Dist. Ct. July 19, 2005) ........... 5, 6

*Roberts v. Adams*,
47 P.3d 690 (Colo. App. 2001) ........................................................................... 8

*Sherman v. British Leyland Motors, Ltd*.,
601 F.2d 429 (9th Cir. 1979) ............................................................................. 10

*Snoey v. Adv. Forming Tech., Inc*.,
844 F.Supp. 1394 (D.Colo. 1994) ...................................................................... 14

*Sonora Diamond Corp. v. Super. Ct.*
(2000) 83 Cal.App.4th 523 ................................................................................. 6

*Student Marketing Group, Inc. v. College Partnership, Inc*.,
247 Fed.Appx. 90 (10th Cir. 2007) ..................................................................... 16

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ............................................................................. 14

*Town of Alma v. AZCO Constr., Inc*.,
10 P.3d 1256 (Colo. 2000) ....................................................................... 4, 5, 12, 17

*Trimble v. City & County of Denver*,
697 P.2d 716 (Colo. 1985) ................................................................................. 9

*U.S. v. Jones*,
176 F.2d 278 (9th Cir. 1949) ............................................................................. 7

*W. Distrib. Co. v. Diodosio*,
841 P.2d 1053 (Colo. 1992) ............................................................................... 10

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc*.,
178 F.Supp.2d 1099 (C.D. Cal. 2001) ................................................................ 19

*Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc*.,
872 P.2d 1359 (Colo. App. 1994) ....................................................................... 11

*West v. Henderson*
(1991) 227 Cal.App.3d 1578 .............................................................................. 14

*Western Federal Saving & Loan Ass'n of Denver v. National Homes Corp*.,
445 P.2d 892 (Colo. 1968) ................................................................................. 7

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

vi

*Westfield Dev. Co. v. Rifle Inv. Assocs.*,
   786 P.2d 1112 (Colo. 1990) ........................................................................................ 12, 13

**Statutes**

28 U.S.C. § 2201(a) ......................................................................................................... 7

Cal. Bus. & Prof. Code § 17045 .................................................................................... 16

Cal. Bus. & Prof. Code § 17204 .................................................................................... 18

**Other Authorities**

3 Williston on Contracts, § 7:21 (4th ed.) ................................................................... 8, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 3

Fed. R. Civ. P. 12(e) ..................................................................................................... 21

Fed. R. Civ. P. 8 ........................................................................................................... 21

Fed. R. Civ. P. 9(b) ................................................................................................. 13, 14

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

<div style="text-align:left; font-weight:bold;">BRYAN CAVE LLP<br>120 BROADWAY, SUITE 300<br>SANTA MONICA, CALIFORNIA 90401-2386</div>

**Memorandum of Points and Authorities**

**Prefatory Statement**

The plaintiffs are two corporate franchisees of tire stores and their individual stockholders, who have attempted to state eleven causes of action, premised largely on the claim that the contracts the corporate entities executed may be set aside because they no longer appear to have been good business deals. Under the parties' Colorado choice of law, the economic loss rule bars virtually all of their claims and limits them to their contract claim alone. Even then, the plaintiffs have failed to assert actionable claims.

Mr. Leung alleges that he worked as a Big O employee for *fourteen years*. [First Amended Complaint ("FAC"), ¶ 14] In 1999, he bought half of a Big O tire store. [*Id.*] In 2004, he bought the other half. [*Id.*] In 2007, Mr. Leung paid $280,000 for the rights to operate a *second* Big O Tire store and purchased the land on which it stands for $2.6 million. [*Id.*, ¶¶ 17, 22] Now, he claims that he has finally discovered after all these years that there was such a *complete* lack of consideration when his corporations purchased their stores, claiming that these transactions can be entirely invalidated for lack of consideration. [*Id.*, ¶ 38]

After 14 years of employment, Mr. Leung thought enough of the Big O name that he formed a corporation to purchase a long-term Big O franchise. Leung evidently earned enough money in a few short years as a Big O franchisee that he could spend millions on buying a second store, which apparently seemed like a good idea to him just two years ago. It is too late to claim that there is such a complete lack of value in the Big O franchise that the entire relationship can be invalidated for lack of consideration. If parties to contracts could so prosper in good times and then later negate an entire relationship as worthless from the start, we would have no economic system at all. Such a theory of contracts would make all contracts voidable in hard times. The law is otherwise and the plaintiffs have no legal claim to invalidate their contracts.

**Statement of Facts**

**1.     The Parties**

Plaintiff EC Tires, Inc. ("EC Tires") is a California corporation that operates a Big O tire franchise in El Cerrito, California. [FAC, ¶ 1, Ex. A] Plaintiff Croda/Leung, LLC

("Croda/Leung") is a California limited liability company that operates a Big O tire franchise in Berkeley, California.  [FAC, ¶ 2, Ex. B]  Steven Leung is a shareholder of EC Tires and Croda/Leung who signed the Agreements in that capacity.  [FAC, ¶¶ 1-2, Exs. A-B]  Constance Leung served as a franchise guarantor of EC Tires and Croda/Leung.  [FAC, ¶¶ 1-2, Exs. A-B, Schedule 3, p. 3]

Big O is a Nevada limited liability company, with its principal place of business in Colorado, in the business of franchising tire stores.  [FAC, ¶ 3]  Big O and its alleged parent corporations, Sumitomo Corporation of America and TBC Corporation, are vaguely claimed to be alter egos of one another.  [FAC, ¶¶ 5-6]

**2.     The Franchise Agreements**

EC Tires and Croda/Leung entered into franchise agreements with Big O, both dated November 5, 2007.  [FAC, ¶ 2 and Exs. A-B, p. ii]  Steven Leung signed the agreements, which he attaches to his First Amended Complaint, but otherwise disregards.  EC Tires and Croda/Leung committed to a ten year franchise relationship, running until November 5, 2017.  [FAC, Exs. A-B, pp. ii, 10]  EC Tires and Croda/Leung acknowledged in the agreements that their principal interest in acquiring a Big O franchise was "to sell Big O private brand tires and related merchandise and benefit from Big O's Products and Services selection, purchasing programs . . ."  [*Id.*, p. 19, § 14.01]

EC Tires and Croda/Leung agreed to stock Big O private brand tires and other products "in such quantities as Big O may prescribe."  [*Id.*, p. 19, § 14.01]  EC Tires and Croda/Leung were to purchase at least 50% of their products from suppliers designated by Big O and committed themselves to purchase products and services only from Big O or sources approved by Big O.  [*Id.*, p. 19, § 14.01-02]

Big O was to "provide, *to the extent available to Big O*, a source from which Franchisee may purchase Big O private brand tires."  [*Id.*, p. 13, § 7.02(a)(i) (emphasis added)]  There was no "warranty or guaranty, express or implied, as to the obligation of Big O to provide Franchisee with any specific or sufficient amount of Products and Services. . . ."  [*Id.*, p. 38, § 32(c)]

Big O had the option, "*in its sole discretion*, [to] provide to the Franchise Advisory Council

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

ongoing marketing research into new tire selections and other line of Products and Services and ways to enhance the competitive posture of Big O Stores." [*Id.*, p. 13, § 7.02(a)(ii)]

Big O agreed to provide EC Tires and Croda/Leung with initial training "to the extent and as determined by Big O from time to time in its sole discretion." [*Id.*, pp. 12-13, § 7.01(c)] Big O could provide additional training "[i]n some circumstances designated by Big O *in its sole discretion.*" [*Id.* (emphasis added)]

The Agreements require contributions to Advertising Funds, but the Agreements expressly provide that "Big O has *no obligation to Franchisee* to enforce payments or contributions (in whole or in part) by other franchisees." [*Id.*, p. 24, § 15.03(b) (emphasis added)]

EC Tires and Croda/Leung recognized that "different terms and conditions, including a different fee structure and investment requirements may pertain to different Big O franchises" and that Big O "does not represent that all franchise agreements are or will be identical." [*Id.*, p. 39, § 32(h)]

Under Big O's warranty program set forth in the Agreements, Big O absorbed the franchisees' costs for certain specified claims, allocating all others to the franchisees. [*Id.*, pp. 20-21, §14.04(b)]

EC Tires and Croda/Leung acknowledged that the franchise "involves business risks and that Franchisee's volume, profit, income and success *is dependent primarily upon Franchisee's ability as an independent business operator.*" [*Id.*, p. 38, § 32(b) (emphasis added)] Big O expressly disclaimed "any warranty or guaranty, express or implied, . . . as to the potential volume, profit, income or success of the Franchised Business." [*Id.*, p. 38, § 32(c)]

**Legal Argument**

**1.    Legal Standard For A Motion Under Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must now allege sufficient factual matter to "state a claim to relief that is *plausible on its face.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007) (emphasis added). "A claim has facial plausibility

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The plaintiffs must also meet heightened pleading standards for their fraud claims.

In ruling on a motion to dismiss, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

**2.     Choice of Law**

The parties agreed that the Agreements "shall be governed by and interpreted in accordance with Colorado law, which shall prevail in the event of any conflict of law."  [FAC, Exs. A-B, p. 37, § 29.01]  The Agreements were accepted by Big O in Colorado, where it maintains its principal place of business.  [*Id.*]

There are sound business justifications for having a single body of law applied to all of a franchise system's agreements.  *See, e.g., Capital Nat'l Bank v. McDonald's Corp.*, 625 F.Supp. 874, 880 (S.D.N.Y. 1986) ("Because McDonald's enters into a substantial number of franchise agreements in various states, it has an interest in having those agreements governed by one body of law.").

Enforceability of the choice-of-law provision is governed by California law.  *See ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005).  When a specified body of law "governs" the "agreement," it "encompasses all causes of action arising from or related to that agreement . . . including tortious breaches of duties emanating from the agreement or the legal relationships it creates."  *Nedlloyd Lines B.V. v. Super. Ct.* (1992) 3 Cal.4th 459, 470.

**3.     Colorado's Economic Loss Rule Limits the Plaintiffs to Contract Claims**

Under Colorado's economic-loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  For a duty to be "independent" it must arise from a source other than the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

contract.  *Id.* at 1263.  A duty is not independent if it is also imposed by the contract.  *See BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004); *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1270 (Colo. 2000).  Even where a duty would have been imposed in the absence of a contract, the duty cannot be independent of a contract that memorializes it.  *BRW,* 99 P.3d at 74.

The First Amended Complaint seeks damages based upon the purchase of real property, approximately $280,000 invested for the rights to operate the El Cerrito Store, and the loss of customers who felt the plaintiffs' "pricing is too expensive."  [FAC, ¶¶ 22-23]  These are "economic damages" under Colorado law and limit the plaintiffs to contract claims only.

The plaintiffs allege that they were damaged by the incompetence of the defendants' employees who gave them negligent advice about whether their inventory would be adequate, and whether they should convert to a different business model.  [FAC, ¶¶ 19(c), (e), 78-81]  These claims are all barred by the economic loss rule.

The contract addresses each of these duties.  The Agreements provide that that Big O was to "provide, *to the extent available to Big O,* a source from which Franchisee may purchase Big O private brand tires."  [FAC, Exs. A-B, p. 13, § 7.02(a)(i) (emphasis added)]  Big O also expressly disclaimed "any warranty or guaranty, express or implied, as to the obligation of Big O to provide Franchisee with any specific or sufficient amount of Products and Services . . ."  [*Id.*, p. 38, § 32(c)]  EC Tires and Croda/Leung acknowledged that the franchise "involves business risks and that Franchisee's volume, profit, income and success *is dependent primarily upon Franchisee's ability as an independent business operator.*"  [*Id.*, p. 38, § 32(b) (emphasis added)]  Big O expressly disclaimed "any warranty or guaranty, express or implied, . . . as to the potential volume, profit, income or success of the Franchised Business."  [Id., p. 38, § 32(c)]

In *RHC, LLC v. Quizno's Franchising, LLC,* Case No. 04-CV-985, 2005 WL 1799536 (Colo. Dist. Ct. July 19, 2005), the court held that the claim that a "franchisor owes a duty of competence to a franchisee" was not viable:  "Even if Colorado law recognized, which it does not, this alleged duty from a franchisor to a franchisee, the economic loss rule would bar [p]laintiffs' breach of a duty of competence claim."  *Id.* at *7.  "As long as the contract addresses the duty, any alleged breach *must be presented as a breach of contract* and cannot be brought in tort."  *Id.*

(emphasis added).  Thus, for example, where a contract "addresses the relative responsibilities with respect to selecting a site for [a] restaurant," the "economic loss rule bars the [p]laintiffs' attempt to create a duty of competence with respect to [the franchisor's] approval of the locations."  *Id.*

**4.     Plaintiffs Fail to State Any Claim Against the Individual Defendants**

The individual defendants, Bill Moseley and David Lynch, are not parties to any contract with the plaintiffs.  The plaintiffs have also alleged no facts demonstrating any actionable conduct on the part of the individual defendants.  Accordingly, they should be dismissed.

**5.     Plaintiffs Fail to Establish Alter Ego Liability**

The plaintiffs assert an alter ego theory of liability against TBC Corporation and Sumitomo Corporation of America.  [FAC, ¶¶ 5-6]  Although the plaintiffs allege that "Sumitomo owns, directs, controls, and dominates the activities and business performances of TBC and, consequently, of Big O" [*Id.*], the same would be true of any parent-subsidiary relationship, and is insufficient to establish alter ego liability.  *See Sonora Diamond Corp. v. Super. Ct.* (2000) 83 Cal.App.4th 523, 541 ("The relationship of owner to owned contemplates . . . a certain degree of direction and management exercised by the former over the latter.").

To establish alter ego, it must also be shown that "the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose."  *Sonora Diamond,* 83 Cal.App.4th at 538; *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances."); *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006) (the corporate fiction must be "used to perpetrate a fraud or defeat a rightful claim").

Because the plaintiffs fail to allege facts showing fraud or the promotion of injustice by the fiction of corporate separate existence, they fail to properly allege an alter ego theory of liability against TBC Corporation and Sumitomo Corporation of America.  Because the plaintiffs allege no specific conduct against these defendants and rely solely on an alter ego theory of liability, they should be dismissed.

**6.     Declaratory Relief Would Serve No Useful Purpose**

To state a claim for declaratory relief, there must be an actual controversy.  28 U.S.C. §

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   2201(a) (requiring "a case of actual controversy").  There must be "a substantial controversy,

2   between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

3   issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127

4   (2007).  Even where a case or controversy technically exists, "no declaration should be made,

5   unless it serve[s] a useful, practical purpose, or when no beneficial result would follow."  *U.S. v.*

6   *Jones*, 176 F.2d 278, 280 (9th Cir. 1949) (no error in refusal to make requested declaration as to

7   right to cancel sale where the plaintiff was not entitled to have sale cancelled).

8       Underlying claims must be examined to determine the propriety of declaratory relief.  *See*

9   *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000).  A motion to dismiss is

10  properly granted on a declaratory relief claim where the "theory could not possibly give rise to a

11  cognizable legal claim."  *Hafiz v. Greenpoint Mortg. Funding, Inc.*, – F.Supp.2d – , 2009 WL

12  2137393 (N.D. Cal. 2009); *Onoh v. Citigroup*, 2009 WL 2246207 (N.D. Cal. July 27, 2009) (where

13  substantive fraud claim failed, declaratory relief was not available as to same issue).

14      Here, no useful purpose would be served by a declaration because the law is squarely against

15  the plaintiffs' claims.  The plaintiffs claim that "the Big O name does not have the value in the

16  marketplace" they expected, so that they now believe that they "received *nothing* in return for the

17  6%" royalty."  [FAC, ¶¶ 27, 37, emphasis added]  Based upon this assertion, the plaintiffs seek

18  rescission of the franchise agreements for "lack of consideration."  [FAC, ¶¶ 36-40]  If post-contract

19  disappointment were sufficient to warrant rescission, virtually all commercial transactions would

20  give rise to legal proceedings.  The standard calls for a good deal more.

21      "It may be said generally that doing, or agreeing to do, what one is not legally obligated to

22  do, constitutes in law consideration."  *Cooper v. Cooper,* 146 P.2d 986, 897 (Colo. 1944).  In

23  *Western Federal Saving & Loan Ass'n of Denver v. National Homes Corp*., 445 P.2d 892, 897-98

24  (Colo. 1968), the court explained, "[I]t may be that National will receive *nothing*. . . .

25  Nevertheless, legally there was consideration.  A benefit to the promisor or a detriment to the

26  promisee can constitute consideration, however slight.  Consideration is not to be measured in the

27  light of the eventual success or failure under a contract but rather consideration is measured as of

28  the time of making the contract."  (Emphasis added.)

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Franchisees have other choices available to them.  *See, e.g., Queen City Pizza, Inc. v. Domino's  Pizza, Inc*., 124 F.3d 430, 441 (3d Cir. 1997) ("The plaintiffs need not have become Domino's franchisees . . . plaintiffs could have purchased a different form of restaurant, or made some alternative investment."); *Exxon Corp. v. Super. Ct.* (1997) 51 Cal.App.4th 1672, 1686 ("[Plaintiffs] had the entire spectrum of gasoline sellers from whom to choose . . . ."); *AAMCO Transmissions, Inc. v. Harris*, 1990 WL 83336 (E.D.Pa. 1990) ("franchise agreements are less 'necessitous' than loan contracts, insurance contracts and leases; a prospective franchisee has other options").  EC Tires and Croda/Leung purchased Big O franchises because they provided them with something of value.

Specifically, EC Tires and Croda/Leung received the right to conduct business using licensed marks that belong to Big O [FAC, Exs. A-B, p. 1, § C]; with the exclusive right to operate a Big O store within a defined "trade area" [*Id*., p. 8, § 2.02]; exclusive option rights on Big O stores within a five mile radius of their stores [*Id*., p. 8, § 3.01]; a "prototype floor plan, elevation and equipment layout" for their stores [*Id*., p. 12, § 7.01(b)]; and the right to use Big O's operations manual [*Id*., p. 18, § 13.01].  Big O agreed to provide EC Tires and Croda/Leung with these benefits that it had no legal obligation to provide.  This is sufficient in itself to establish valid consideration at the time of contracting.

Steven Leung had been working as a Big O employee for 14 years and had already been operating a Big O franchise for almost ten years when he signed the franchise agreements that he now seeks to rescind.  [FAC, ¶¶ 14, 18]  He saw value in opening another Big O store and made a voluntarily business decision to convert his existing store to a BFF franchise in exchange for the right to open another store.  The very fact that Mr. Leung engaged in such negotiations just to obtain yet another Big O store is sufficient to demonstrate that there was value in the Big O franchise.

Under Colorado law, a party is bound by a contract, even if he later concludes he entered into a bad deal.  *Roberts v. Adams*, 47 P.3d 690 (Colo. App. 2001).  "[T]he law will not inquire into the adequacy of consideration as long as the consideration is otherwise valid. . . . [T]hat the relative value or worth of the exchange is unequal is irrelevant."  *3 Williston on Contracts*, § 7:21 (4th ed.).

A promisor "will be held to its promise, regardless of the value of the services, and even though they may be valueless in fact." *Id.*  Courts are not in a position to "lay down economic policy" as to the relative fairness of substantive contract terms. *Princess Cruise Lines, Ltd. v. Super. Ct.* (2009) 179 Cal.App.4th 36.

The plaintiffs' claim that they have entered into a "highly unfavorable Franchise Agreement" does not present a legal controversy for which a declaration of rights would serve any useful purpose.  [FAC, ¶ 61]  Courts are in no position to weigh the relative economic value of a commercial transaction.  This is not a proper basis for a declaratory relief action.  Subjecting the parties to discovery on such an issue would serve no wholesome purpose.

The question is whether there was any consideration; the Agreements attached to the FAC establish the fact of consideration as a matter of law, leaving no justiciable controversy.

**7.     Rescission Is Not an Independent Cause of Action**

Under both California and Colorado law, "[r]escission is *not* a cause of action; it is a remedy." *Nakash v. Super. Ct.* (1987) 196 Cal.App.3d 59, 70; *Trimble v. City & County of Denver,* 697 P.2d 716, 723 (Colo. 1985) (explaining that a plaintiff must make an election between the remedies of rescission and damages).  The second cause of action for rescission should, therefore, be dismissed.

**8.     There Is No Viable Claim for Breach of Contract**

**A.     Steven and Constance Leung Have No Contract with the Defendants**

Steven and Constance Leung allege no facts establishing that they had any contract with the defendants.  The Agreements were entered into between Big O and EC Tires and Croda/Leung only.

"[C]ourts have consistently refused to carve out a widespread exception, applicable in the franchise context, to the general rule that an individual shareholder cannot sue for injuries suffered by the corporation." *Fiore v. McDonald's*, 1996 WL 331090, *3 (E.D.N.Y. 1996); *Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F.Supp. 1311 (N.D. Ill. 1993) (denying standing to sole shareholder of franchisee to sue franchisor); *Dunafon v. Taco Bell Corp.*, Bus. Franchise Guide (CCH) ¶ 10,919 (W.D. Mo. 1996) (same); *Ciletti v. Exxon Co., USA*, Bus. Franchise Guide (CCH) ¶ 10,190

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

(E.D.Pa. 1992) (same); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439 (9th Cir. 1979) (denying standing to sole stockholder of franchisee corporation despite individual's personal guarantee of corporation's obligations).

In the absence of a contractual relationship, Steven and Constance Leung's third cause of action for breach of contract fails. *See W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992) (existence of a contract is an essential element of a breach claim).

**B.      The Alleged Breaches Conflict with Provisions of the Contract**

The breaches alleged by the plaintiffs are inconsistent with express terms of the Agreements. The plaintiffs allege that at times the defendants failed to provide a sufficient supply of products, but the Agreements expressly disclaim any guaranty of any specific or sufficient amount of products.  [FAC, ¶ 46(A),(F); Exs. A-B, p. 38, § 32(c)]

The plaintiffs allege that the defendants "failed to develop" a warranty program for Big O private brand tires, but the Agreements, themselves, detail the terms of the Big O warranty program.  In most circumstances, this warranty program puts the onus on the franchisee.  [*See* FAC, ¶ 46(H); Exs. A-B, pp. 20-21, § 14.04(b)]  The plaintiffs do not claim that Big O *breached* the Agreements by failing to adhere to the warranty program stated in the Agreements, but instead appear to be claiming a failure to develop a warranty program that places more of a burden on Big O.  The plaintiffs further claim that the unequal terms and conditions pertaining to other franchisees, disclosed to them before they entered into the Agreements, somehow breaches the Agreements.  [*See* FAC, ¶ 46(J); Exs. A-B, p. 39, § 32(h)]

The plaintiffs also allege that the defendants breached obligations that are not contained anywhere in the Agreements, such as purported obligations to research and develop new lines of products and services, to develop unique and proprietary systems of operations, to develop an innovative marketing system, and to provide more "competitively priced" tires.  [*See* FAC, ¶ 46(A), (C)-(E), (G); *see generally* Exs. A-B]  In the absence of any duty imposed by the Agreements, these alleged failures do not establish any breach of the Agreements.

**9.      The Implied Covenant Cannot Add Duties that Contradict the Contract**

    **A.      Steven and Constance Leung Have No Contract with Defendants**

Because Steven and Constance Leung have not established any contractual relationship with any of the defendants, their fourth cause of action for breach of the implied covenant of good faith and fair dealing is without merit.  *See New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 412 (10th Cir. 1996) (applying Colorado law) ("the duty of good faith and fair dealing is only present in fulfilling the terms of a valid contract.").

    **B.      Implied Covenant Claim is Vague and Duplicative**

The plaintiffs allege that "Defendants breached the implied covenant of good faith and fair dealing as alleged throughout this complaint."  [FAC, ¶ 51]  At the outset, this allegation is defectively vague and unintelligible, because the defendants are unable to determine which of the plaintiffs' allegations form the basis of the implied covenant claim.

"The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time.  The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party."  *Amoco Oil Co. v. Ervin,*  908 P.2d 493, 498 (Colo. 1995).  Because the plaintiffs have identified no specific contractual provision vesting Big O with discretionary authority that is the subject of this claim, they have not established a breach of the implied covenant.

Further, all of the duties owed by the parties to one another are expressly contemplated under the terms of their Agreements.  The plaintiffs cannot supplement or modify those terms by reformulating their claims under the implied covenant of good faith and fair dealing.  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc*., 872 P.2d 1359, 1363 (Colo. App. 1994) ("the duty of good faith and fair dealing does  not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions.  Nor does the duty . . . inject substantive terms into the parties' contract.").

To the extent that the plaintiffs' fourth cause of action relies on the same acts, and seeks the same damages, as their claims for breach of contract, it can be dismissed as duplicative.  *Gabana*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    *Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.,* 2008 WL 111223, *12 (N.D. Cal. 2008) ("Where breach

2    of an actual [contract] term is alleged, a separate implied covenant claim, based on the same breach,

3    is superfluous.") (dismissing duplicative implied covenant claim with prejudice).

C.   **The Plaintiffs Allege No Special Relationship**

5        Tort recovery for breach of the implied covenant is available only in limited circumstances

6    involving bad faith breach of an insurance contract. *Colorado Interstate Gas Co. v. Chemco, Inc.*,

7    833 P.2d 786, 792 (Colo. App. 1992).  Further,  Colorado's economic-loss rule would bar any tort

8    claim for a contractual breach. *See Town of Alma,* 10 P.3d at 1264.

**10.    There Is No Viable Claim for Tortious Interference**

10       The plaintiffs' tort claim is barred under Colorado's economic-loss rule, whereby "a party

11   suffering only economic loss from the breach of an express or implied contractual duty may not

12   assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of*

13   *Alma,* 10 P.3d at 1264.  Under Colorado law, a party to a contract cannot be the tortfeasor in a

14   tortious interference claim. *Am. Presents, Ltd. v. Hopkins,* 330 F.Supp.2d 1217, 1229 (D. Colo.

15   2004) (tortious interference "does not encompass a business advantage in which the alleged

16   tortfeasor is already a prospective participant or regarding which the alleged tortfeasor already has

17   contractual duties.").

18       Further, the plaintiffs fail to adequately plead a claim.  To state a claim, the plaintiffs must

19   plead that the defendants' alleged interference constituted an independently wrongful act – that the

20   defendant "engaged in conduct that was wrongful in some legal measure other than the fact of

21   interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393;

22   *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1118 (Colo. 1990) ("Even if the

23   interference is intentional, therefore, liability does not attach unless the court concludes that the

24   actor's conduct is also improper.").

25       The plaintiffs contend that Big O interfered with their existing economic relationships with

26   other tire wholesalers by using its economic power to convince competing tire wholesalers not to

27   do business with the plaintiffs, to force them to purchase products through Big O.  [FAC, ¶ 55]

28   They also allege that the interference was "wrongful" and "improper" because it was "per se, in

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   restraint of trade. [FAC, ¶ 56] The plaintiffs, however, are obligated to plead more than that the

2   defendants' conduct was "a restraint of trade."

3       "[I]n the absence of prohibition by statute, illegitimate means, or some other unlawful

4   element, a defendant seeking to increase his own business may . . . *refuse to deal with third parties*

5   *unless they cease dealing with the plaintiff*, all without incurring liability." *PMC, Inc. v. Saban*

6   *Entm't, Inc.* (1996) 45 Cal.App.4th 579, 603-04 (emphasis added). Additionally, "[o]ne who, by

7   asserting in good faith a legally protected interest of his own . . . intentionally causes a third person

8   not to . . . enter into a prospective contractual relation with another does not interfere improperly

9   with the other's relation if the actor believes that his interest may otherwise be impaired or

10  destroyed by the performance of the contract or transaction." *Westfield Dev. Co.,* 786 P.2d at 1118;

11  *see also Radiology Prof'l Corp. v. Trinidad Area Health Assoc.*, 565 P.2d 952, 954 (Colo. App.

12  1977), *aff'd*, 577 P.2d 748 (Colo. 1978) (a party cannot be liable for tortious interference when it

13  has an absolute legal right to engage in the conduct alleged to constitute interference).

14      In *Exxon Corp. v. Superior Court* (1997) 51 Cal.App.4th 1672, the court held that

15  franchisees' claims for tortious interference "must be tied to finding an anticompetitive practice,

16  even if not a statutory antitrust violation." *Id*. at 1688. The court found no wrongful act because

17  "Exxon in fact has a clear financial interest in its dealers and therefore is privileged to 'interfere'

18  with the contract." *Id*.

19      Here, the Agreements expressly required EC Tires and Croda/Leung to purchase at least

20  50% of all their purchases of products from suppliers designated by Big O, and to purchase all

21  products and services *only* from Big O or sources approved by Big O. [FAC, Exs. A-B, p. 19, §

22  14.01-02] Big O had a contractual right to ensure that the plaintiffs purchased tires from Big O or

23  its approved sources and was privileged to interfere with the plaintiffs' attempts to contract with

24  other wholesalers in violation of the Agreements.

25  **11. There Is No Viable Claim for Fraud or Negligent Misrepresentation**

26      **A. The Plaintiffs Fail to Plead Fraud with the Requisite Specificity**

27      Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to "state with

28  particularity the circumstances constituting fraud or mistake." To avoid dismissal for inadequacy

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  under Rule 9(b), a complaint must specifically "state the time, place, and specific content of the

2  false representations as well as the identities of the parties to the misrepresentation." *Edwards v.*

3  *Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). "A plaintiff's burden in asserting a fraud

4  claim against a corporate employer is even greater. . . . [T]he plaintiff must allege the names of the

5  persons who made the allegedly fraudulent representations, their authority to speak, to whom they

6  spoke, what they said or wrote, and when it was said or written." *Fortaleza v. PNC Fin. Servs.*

7  *Group, Inc.*, 2009 WL 2246212, *8 (N.D. Cal. 2009).

8      "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but

9  requires plaintiffs to differentiate their allegations when suing more than one defendant and inform

10 each defendant separately of the allegations surrounding his alleged participation in the fraud.'"

11 *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *Lubin v. Sybedon Corp.*, 688 F.Supp.

12 1425, 1454 (S.D. Cal. 1988).

13     The plaintiffs' fraud claim does not state the name of the speaker, his authority to speak,

14 when and where the alleged statements were made, whether the statements were oral or written, or

15 the documents containing the representations. [FAC, ¶ 19-20, 60-63] The plaintiffs' allegations

16 name the "Defendants" collectively and fail to differentiate among them. [*Id.*]

17         **B.      The Plaintiffs Do Not Allege a Third Party Transaction**

18     Under Colorado law, "a third-party transaction is necessary to state a claim for negligent

19 misrepresentation." *Snoey v. Adv. Forming Tech., Inc.*, 844 F.Supp. 1394, 1400 (D.Colo. 1994).

20 Where a plaintiff alleges a negligent misrepresentation "only in connection with his relations with

21 Defendants and not a third party, [that] claim must be dismissed." *Id.*; *see also Grubka v.*

22 *WebAccess Int'l, Inc.*, 445 F.Supp.2d 1259, 1270 (D.Colo. 2006) (Defendants "may be held liable

23 for negligent misrepresentation only if they supplied the offending information for use in a

24 transaction not involving them."). Here, the plaintiffs allege negligent misrepresentations made

25 only in connection with their relations with the defendants and not any third party. [FAC, ¶ 73]

26         **C.      The Integration Clause Bars Reasonable Reliance**

27     The terms of the integrated franchise agreements preclude extrinsic evidence of fraud in the

28 inducement. *See West v. Henderson* (1991) 227 Cal.App.3d 1578, 1581 (parol evidence rule barred

fraud in the inducement arising from oral representations contradicted in written lease); *Cont'l Airlines v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 419 (parol evidence "offered to show a fraudulent promise directly at variance with the terms of the written agreement" is inadmissible).

The plaintiffs allege that the defendants misrepresented that all franchisees contributed 4% of its gross sales to an advertising program, but the Agreements expressly provide that Big O has "*no obligation to Franchisee* to enforce payments or contributions (in whole or in part) by other franchisees."  [FAC, ¶ 19(a); Exs. A-B, p. 24, § 15.03(b)]

The plaintiffs allege that the defendants represented that they would supply them with a dependable supply of products, but the Agreements expressly disclaimed "any warranty or guaranty, express or implied, as to the obligation of Big O to provide Franchisee with any specific or sufficient amount of Products and Services . . ."  [FAC, ¶ 19(c); Exs. A-B, p. 38, § 32(c)]

The plaintiffs further allege the defendants misrepresented their profit and success, but the Agreements contain an express disclaimer of "any warranty or guaranty, express or implied, . . . as to the potential volume, profit, income or success of the Franchised Business."  [*See* FAC, ¶ 19(e); Exs. A-B, p. 38, §32(c)]

The Agreements contain not only specific provisions that are contradicted by the plaintiffs' allegations, but also an integration clause superseding "any oral or written representations which are inconsistent with the [Agreements'] terms."  [FAC, Ex. A-B, p. 39, §32(g)]

Taken in conjunction with the specific terms and provisions that conflict with the plaintiffs' allegations about oral representations, this integration clause bars the plaintiffs' fraud claims because it would have been unreasonable for the plaintiffs to have relied on any pre-sale representations in the face of these disclaimers.  *See Cal. Bagel Co. v. Am. Bagel Co.*, Bus. Franchise Guide (CCH) ¶ 11,880 (C.D. Cal. 2000) (franchisees could not have reasonably relied on alleged representations concerning profits because documents stated that the franchisor did not furnish or authorize its sales personnel to furnish information on profits); *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1427 (S.D. Fla. 1996) (franchisee could not rely on representations that "flatly contradicted the terms of the UFOC and the Franchise Agreement"); *Davis v. Gulf Oil*

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

15

1   *Corp.*, 572 F. Supp. 1393, 1400 (C.D. Cal. 1993) (integration clause bars alleged pre-sale oral

2   representation that agreement would not be terminated absent good cause).

3       In *Student Marketing Group, Inc. v. College Partnership, Inc.*, 247 Fed. Appx. 90, 99 (10th

4   Cir. 2007), the court, applying Colorado law, held that a clause waiving the completeness of the

5   information provided coupled with an integration clause, precluded reasonable reliance.  *See also*

6   *Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 369-73 (clause specifically

7   precluding tenant's reliance on landlord's representations regarding other prospective tenants in

8   shopping center fully rebutted justifiable reliance element of fraud).

9   **12.    There Is No Viable Claim for Violation of the Unfair Practices Act**

10      The plaintiffs allege that "Defendants" violated the Unfair Practices Act by "providing

11  secret, discriminatory unearned rebates or discounts" to larger Big O franchisees that injure

12  competitors and competition generally.  [FAC, ¶ 66]

13      The plaintiffs' claim merely tracks the language of Business & Professions Code § 17045,

14  without providing any supporting facts.  These vague and conclusory allegations, directed at

15  "Defendants" collectively,  fail to establish a cognizable claim.  The precise nature and

16  circumstance surrounding these alleged "discounts or rebates" are not clear, nor are the alleged

17  recipients.  In antitrust cases, "a district court must retain the power to insist on some specificity in

18  pleading before allowing a potentially massive factual controversy to proceed."  *Bell Atl. Corp. v.*

19  *Twombly*, 550 U.S. 544, 558 (2007).  *Twombly* requires a showing of plausibility, and the plaintiffs

20  fail to make this required showing.

21      The plaintiffs knew from the Agreements that "different terms and conditions, including a

22  different fee structure and investment requirements may pertain to different Big O franchises" and

23  that Big O "does not represent that all franchise agreements are or will be identical."  [FAC, Exs.

24  A-B, p. 39, § 32(h)]  Intrabrand pricing does not injure competition and is "not a concern of the

25  antitrust laws."  *Exxon*, 51 Cal.App.4th at 1681.

26  **13.    There Is No Viable Claim for Negligent Hiring, Training and Supervision**

27      The plaintiffs' tort claim is barred under Colorado's economic-loss rule, whereby "a party

28  suffering only economic loss from the breach of an express or implied contractual duty may not

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma,* 10 P.3d at 1264.

The plaintiffs also fail to adequately plead a claim for negligent hiring, training and supervision.  Under both California and Colorado law, "there can be no liability for negligent supervision 'in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised.'"  *Juarez v. Boy Scouts of Am., Inc.* (2000) 81 Cal.App.4th 377, 395; *Raleigh v. Performance Plumbing & Heating,* 130 P.3d 1011, 1016 (Colo. 2006).  Accordingly, "liability for negligence can be imposed only when the employer knows, or should know, that the employee, *because of past behavior or other factors*, is unfit for the specific tasks to be performed."  *Federico v. Super. Ct.* (1997) 59 Cal.App.4th 1207, 1215 (emphasis added); *Raleigh,* 130 P.3d at 1016 (duty based on "actual knowledge at the time of hiring . . . of character or prior conduct [that] would create an undue risk of harm in carrying out his or her employment responsibilities.").

The plaintiffs appear to have only a vague dissatisfaction as to the general quality of employees:  "Defendants knew, or in the exercise of reasonable diligence should have known, that its managers, supervisors, employees and/or Does 1-100 were incompetent or unfit to perform the duties for which each was employed. . . ."  [FAC, ¶ 78]  This is insufficient to state a legal claim.

Further, for an employer to be liable for negligent hiring, the plaintiff must also allege that the employee engaged in subsequent *tortious* conduct.  *See Raleigh,* 130 P.3d at 1016 ("the employee's later intentional or non-intentional tort is the predicate for the plaintiff's action against the employer").  This is not the classic case of an employer who hires someone with a violent past, who then hurts someone.  Here, the plaintiffs merely allege dissatisfaction with the suggestions made by Big O employees and fail to identify the specific employee(s) to which their allegations relate.  This is not sufficient.

**14.    There Is No Viable Claim for Unfair Competition**

**A.    The Plaintiffs Lack Standing**

As a threshold matter, the plaintiffs lack standing to bring a claim under the Unfair Competition Law ("UCL"), because they have not suffered any injury that is eligible for restitution.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

*See Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal. 4th 223, 227 ("A private individual has standing to assert a claim only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition."); Cal. Bus. & Prof. Code § 17204. Moreover, "damages are not available under section 17203." *Bank of the West v. Super. Ct.* (1992) 2 Cal. 4th 1254, 1266. Standing is limited "to individuals who suffer losses of money or property *that are eligible for restitution*." *Buckland v. Threshold Enters., Ltd.* (2007) 155 Cal.App.4th 798, 817 (emphasis added). "[T]he trial court may . . . only order restitution to persons from whom money or property has been unfairly or unlawfully obtained." *Cortez v. Purolator Air Filtration Prods., Co.* (2000) 23 Cal.4th 163, 172.

The plaintiffs allege that the defendants' unfair competition consisted of inserting unlawful (but not enforced) terms into the Agreements, not providing them with competitively priced tires and limiting their ability to obtain them from others, not ensuring that other franchisees contributed to the advertising fund, and not providing promised innovative marketing systems or unique systems of operation.  [FAC, ¶¶ 85-93]

None of these allegations identify any money or property belonging to the plaintiffs personally that was wrongfully transferred to or withheld by Big O.  The plaintiffs' conclusory allegation that they have "suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition" is insufficient.  [FAC, ¶ 83]  The plaintiffs lack standing to bring a UCL claim because they have not alleged that they personally suffered any concrete and particularized injury that is eligible for restitution.  *Buckland,* 155 Cal.App.4th at 814 (a plaintiff must establish a "distinct and palpable injury" that is "concrete and particularized").

**B.      The Plaintiffs Have Not Alleged An Unlawful Act**

The plaintiffs allege that the defendants acted unlawfully by "asserting legal rights they did not have," although they do not specify what these vague "legal rights" were.  [FAC, ¶ 85]  They also complain that the defendants included non-compete, forum selection and choice of law provisions in the franchise agreement.  [FAC, ¶¶ 85, 87]  The plaintiffs further re-allege their tortious interference claim that defendants "enter[ed] into agreements in restraint of trade to limit Plaintiffs' ability to obtain tires at competitive prices from other distributors,"."  [FAC, ¶ 86]

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    This cause of action fails because the plaintiffs have not alleged any statutes or regulations

2    that the defendants' conduct purportedly violated.  *See Berryman v. Merit Prop. Mgmt., Inc.* (2007)

3    152 Cal.App.4th 1544, 1554 ("A violation of another law is a predicate for stating a cause of action

4    under the UCL's unlawful prong.").  The so-called "unlawful terms," such as non-compete and

5    forum selection provisions in a uniform national franchise program, have not damaged the plaintiffs

6    because they are not enforceable in California.  Nor have the plaintiffs alleged that the defendants

7    attempted to enforce these provisions against them.  It is not wrongful for Big O to include these

8    provisions in its standard national contracts because they are fully enforceable in other states.

9    There is nothing "unlawful" about having one form of national franchise agreement, where

10   the franchisee is forewarned that the non-compete may not be enforceable, and there has been no

11   attempt to enforce the provision.  *Olsen v. Breeze, Inc.* (1996) 49 Cal.App.4th 608 (just because

12   release form is not enforceable in all possible circumstances does not render its use per se "unfair").

13   As discussed above in connection with the plaintiffs' claim for tortious inference, Big O is

14   entitled to enforce the required product purchases set forth in the Agreement without perpetrating

15   an unlawful restraint of trade.

16   **C.      The Plaintiffs Have Not Alleged A Fraudulent Act**

17   The plaintiffs allege that the defendants acted fraudulently by promising, but not providing,

18   an innovative, new marketing system and a proprietary system of operations, and by promising tires

19   at the cost of manufacture, but charging a higher price.  [FAC, ¶¶ 91-92]  This claim is barred by

20   the economic loss rule, because the contract says nothing of the sort.  [*See generally* FAC, Exs. A-

21   B]

22   The plaintiffs also allege that the defendants acted fraudulently by including forum selection

23   and choice of law provisions in the franchise agreements.  [FAC, ¶ 93]  There is nothing

24   "fraudulent" about having one form of national franchise agreement, where there has been no

25   attempt to enforce the provision in violation of any law.

26   The plaintiffs also fail to make any showing that the public was impacted or was likely to be

27   deceived by the defendants' alleged actions.  *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,* 178

28   F.Supp.2d 1099, 1121 (C.D. Cal. 2001) ("it is necessary under the 'fraudulent' prong [of the UCL]

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  to show deception to some members of the public, or harm to the public interest, and not merely to

2  the direct competitor or other non-consumer party to a contract.").  Accordingly, the plaintiffs'

3  UCL claim under the "fraudulent" prong fails.  Further, since a claim under the fraudulent prong

4  alleges a claim sounding in fraud, the plaintiffs have failed to comply with the pleading

5  requirement that claim be pled with specificity.  *Comm. on Children's Television v. Gen. Foods*

6  *Corp.* (1983) 35 Cal.3d 197, 216.

7        **D.**        **The Plaintiffs Have Not Alleged An Unfair Act**

8        The plaintiffs allege that the defendants acted unfairly "by not ensuring that franchisees

9  contribute to the advertising fund for the collective good of the franchisees."  [FAC, ¶ 89]  The

10  Agreements, however, provide that "Big O has *no obligation to Franchisee* to enforce payments or

11  contributions (in whole or in part) by other franchisees."  [Exs. A-B, p. 24, § 15.03(b) (emphasis

12  added)]

13        The plaintiffs also allege that the defendants acted unfairly "by not providing competitively

14  priced tires to Plaintiffs, while providing tires to others at lower prices."  [FAC, ¶ 91]   The

15  Agreements, however, disclosed the unequal pricing schemes for different franchisees and EC Tires

16  and Croda/Leung freely chose to purchase their franchises with knowledge of that condition.  [Exs.

17  A-B, p. 39, § 32(h)]

18        Further, these allegations merely reallege the plaintiffs' breach of contract claims.  Courts

19  have rejected efforts to stretch the statute to cover similar allegations.  A mere breach of contract

20  cannot form the predicate for a UCL claim unless "it also constitutes conduct that is 'unlawful, or

21  unfair, or fraudulent.'"  *Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638,

22  645; *So. Bay Chevrolet v. Gen. Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 887 (the

23  UCL "does not give the courts a general license to review the fairness of contracts," but rather is

24  aimed at enjoining deceptive practices).

25        Under *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854, the plaintiffs' claim

26  under the UCL's unfair prong is insufficient because they do not allege that the purportedly unfair

27  practices are tethered to any specific constitutional, statutory or regulatory provisions.  *See also*

28  *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1273 (plaintiffs' claim under the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  UCL's unfair prong failed because "the 'right' upon which plaintiffs actually rely. . . is one based

2  on a contract . . . not on a legislatively declared policy).

3  **15.      The Complaint is Uncertain**

4        A Rule 12(e) motion for a more definite statement is proper "when the pleading is so vague

5  or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or

6  without prejudice to himself." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D.

7  Cal. 1999).

8        Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to "plead a short and

9  plain statement of the elements of his or her claim, identifying the transaction or occurrence giving

10  rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216

11  F.3d 837, 840 (9th Cir. 2000).  Under Rule 8, a plaintiff must allege "enough facts to state a claim

12  to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Rule 8

13  "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and a

14  complaint containing "[t]hreadbare recitals of the elements of a cause of action, supported by mere

15  conclusory statements," does not state a cognizable claim. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

16  (2009).  Further, the plaintiffs sue five named defendants and 100 Doe defendants, then refer to

17  "Defendants" in the plural throughout the First Amended Complaint.  These vague allegations

18  render the pleading confusing and leave the defendants and this Court to guess who is being

19  accused of what.

20  **Conclusion**

21        The claims of EC Tires and Croda/Leung against all defendants except Big O should be

22  dismissed because there is no relationship between these parties and allegations of corporate control

23  are insufficient to implicate alleged parent companies in the absence of fraud.  All corporate parents

24  exercise control over their subsidiaries.  Plaintiffs Steven and Constance Leung have no

25  relationship with any of the defendants and their claims should be dismissed.

26        EC Tires and Croda/Leung and Big O are parties to detailed franchise agreements.  To the

27  extent EC Tires and Croda/Leung assert any viable claim, the claim should be limited to contract

28  claims.  Under Colorado's economic loss rule, parties to a contract are limited to contract claims

alone and may not convert those claims into torts through artful pleading.  The plaintiffs voluntarily signed franchise agreements with Big O that imposed various limitations on them.  They cannot now complain years later that the agreements are entirely lacking in consideration.  The plaintiffs have failed to state viable claims, and accordingly, the defendants respectfully request that the Court dismiss their First Amended Complaint.


Dated:  December 18, 2009                    Respectfully submitted,
                                             BRYAN CAVE LLP
                                             Jonathan Solish
                                             Keith D. Klein
                                             Kristy A. Murphy


                                             By:    /s/ Jonathan Solish
                                             Jonathan Solish
                                             Attorneys for Defendants SUMITOMO
                                             CORPORATION OF AMERICA, BIG O TIRES,
                                             LLC, TBC CORPORATION, BILL MOSELEY, and
                                             DAVID LYNCH

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1

**PROOF OF SERVICE**

2

3        I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 120 Broadway, Suite 300, Santa Monica, California 90401.

4

5        On December 18, 2009, I served the foregoing document, described as **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**, on the interested parties in this action, as follows:

6

7    Nicholas W. Hornberger                    *Attorneys for Plaintiffs*
     Hornberger & Brewer, LLP

8    444 S. Flower Street, Suite 3010
     Los Angeles, CA 90071-2901              Tel:    (213) 488-2655
                                             Fax:    (213) 488-1255

9

10

11        ☐     (**BY U.S. MAIL**)  I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above.  I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Santa Monica,

12   California.  I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the

13   correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

14

15        ☒     (**BY CM/ECF**)  The document was served via The United States District Court – Northern District's CM/ECF electronic transfer system which generates a Notice of Electronic Filing (NEF) upon the parties, the assigned judge and any registered user in the case.

16   Each transmission was reported as complete and without error.

17        Executed on December 18, 2009, at Santa Monica, California.

18        ☒     (**FEDERAL ONLY**)  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

19

20        I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

21                                          _____*/s/ Dora Barnett*_____
                                                     Dora Barnett

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SM01DOCS\755310.3